Good morning, may it please the Court. Ernest Leonard on behalf of the Appellant, Coto Settlement. The issue addressed in this appeal is when the statute of limitations commenced on an action based upon claims of a resulting trust under Washington law. And the Washington Supreme Court has said that limitations begin to run when the trustee repudiates the trust. That is, declares the property as his own and gives notice thereof to the beneficiary. In this case, there was no repudiation until 2007. This lawsuit involves approximately a $2 million fund that was the remnants of a failed marketing program that was shut down by the FTC. Why isn't this just a situation where, obviously, when they put in the reserves, it was thought that the claims were going to be a whole lot greater than they were? And no, I don't think anyone was thinking that there would be any money left, but apparently the nature of what people were asking for money, maybe some people didn't want to tell people that they were asking for a refund. And so there was actually some money left. So why isn't this just a situation where your client knew about it, just figured there wouldn't be any money left, but then, voila, there was, and sat on its hands since 2010? Because, and the Court, Your Honors, corrected that in that reading. One of two things was going to happen. Either the judgment was going to exceed the amount of reserves, in which case the funds that the Olympic was holding in trust to cover contingent liabilities would be gone, or two, they could win the litigation, which obviously didn't happen, but in this event there was money returned, in which case there certainly was an expectation that since half the money was my client's, it would go to him. Well, and it does seem like, you know, I mean, the uncomfortable part about this is it seems like perhaps that the other side maybe got a windfall out of this. But I guess what further action by Olympic Telecom, if any, in the summer of 2000, was necessary before COTO could file an action for the withheld reserves? What we could have filed an action then based upon contract, abuse of the discretion given the contract. It would have been a different type of action. If they had asserted ownership, if they had said, no, these are my funds, not yours, then the limitations would have triggered because there was a repudiation. Instead, what Olympic did is said, no, we're going to hold all the money, and there was a dispute over should the money be distributed to the program owners or should it be held pending this looming FTC cloud. That was the dispute. But if Olympic had communicated, and I cited, I believe, the Goodman case out of Washington that says for repudiation it has to be clear and unequivocal. If they had communicated, no, these reserves are mine, buddy, then there would have been certainly a duty on our part to bring the action then. But they didn't. It was simply, we're going to hold these money. The 100 percent reserve was authorized, as I understand it, by the agreement with them, wasn't it? Your Honor, yes, Your Honor. The agreement, the billing services agreement, and I attached. You didn't violate an agreement by going to 100 percent. It would have been an interesting lawsuit to have filed because we would have had to assert there was some sort of duty of good faith or abuse of the discretion because you're right. The duty or the contract gives Olympic the discretion. It says in their sole discretion. And in the motion for new trial, because that was not referenced in the complaint, I attached that for the court to consider. But I believe that under the standards for a motion for new trial, there certainly would be a reasonable inference that Olympic was acting under some sort of contractual obligation. But that certainly was put in front of the court in the motion for new trial. I have the impression that for some reason this result was reached because this was a 100 percent reserve rather than a 98 percent reserve. I'm sorry? Do you underlie this decision? I'm not following, Your Honor. I'm sorry. Well, I'm having a hard time figuring out how the trial court reached this result here, which, of course, doesn't offend you very much. But I have the impression that because this was a 100 percent reserve rather than some increase as a partial level, that was the basis of the judge's decision. Is that right or wrong or what? I believe the judge looked at a 100 percent reserve as the equivalent of taking all your property. That's what I'm trying to say. Yes, Your Honor, and I think that's incorrect because under the standards of Washington law, which is a substantive law that applies here, it was not a repudiation because the Goodman v. Goodman in Washington says that there has to be a communication that, and the quote from Goodman and Goodman is that the repudiation occurs when the trustee by words or other conduct denies there's a trust and claims the property as his or her own. That didn't happen. Well, if the FTC had never filed an action, when would Cotto's claim to the withheld reserves have matured? I think it would have matured when there was no contingent liability that they could reasonably and rationally hold reserves against. That's pretty fuzzy. It is, it is, and that's why I mentioned it would have been an interesting lawsuit to have drafted had I started to reach a contract claim back then. Had there only been minor liability here and there, I would have asserted there's some sort of duty of good faith and fair dealing or something like that that they had breached, but the contract did call for it within its sole discretion. I think if, for example, the lawsuit was dismissed on summary judgment like we wanted it to happen with the FTC action, I think then the duty, we would have made a demand, and had it not been complied with, we would have had to have acted right away. But I believe probably even a more direct answer to your question would be if we made demand to them and they refused without rational basis, I think that then we'd be following under the words, the language of Goodman that their conduct was seen to be a repudiation of their obligations as a trust. Counsel, in the amended complaint, the judge references paragraphs 10 and 11 of the amended complaint where the allegation was that Olympic withheld the reserves. So there were two finite actions, when they raised the reserves and then when they withheld the reserves and then when they paid out the reserves. So when they withheld the reserves, the court, it appears, thought that that was an action that would trigger some sort of liability at that point. And it appears to me that's what the district court thought triggered the duty to inquire or object or whatever Cotto was going to do to preserve its rights. I believe so. I think that's where I clearly believe the court was wrong because, as I mentioned, we could have filed a lawsuit but not this lawsuit. There wasn't a repudiation under Washington law. A lawsuit in 2000 would have been based upon some contractual duty, not upon an assertion of ownership. There was no ownership assertion until 2007 when the FTC said we've got $1.4 million we're giving back. We made a demand for an accounting and they just ignored us and filed a motion to say give it all to us. That's the first time that they clearly and unequivocally, as the Supreme Court of Washington said, communicated a repudiation to us, which is we don't owe anything to you. The money is all ours. Do you want to save any time for rebuttal? Your Honor, I notice I'm at two minutes. I would like to save the rest. Thank you. All right. May it please the Court, Roger Townsend for Apelli, Eisenberg, and Olympic Telecommunications. Counsel, I think you know what our question is, so could you answer it? I mean, at what point did the cause of action arise? I think the cause of action clearly arose and I think Judge Martinez properly determined that the – Well, what is the cause of action? That's my question. The cause of action in – Conversion? When you go to 100% reserve, you bring an action in conversion? I think if – look, Cotto wants to characterize this different ways, different times, depending on – Judge Martinez says this is retrospective rationalization. Of course they – What was the amended complaint? What were the causes of action in the amended complaint? That's what the Court was looking at. Right. Well, but there are changes to facts upon which they're based, and when those facts arose and when the cause of action arose and what – at what point – You haven't told me what the cause of action was. In the amended complaint. In the amended complaint, it's conversion. There are several – Why is this a conversion to announce that you're holding a 100% reserve? I don't understand that. It's – you know, taking 100% of something is akin to – I'm not taking it, though. Well, you're declining to – You're an agent that was charged contractually with certain duties, and you're purporting to carry them out, and you're increasing the reserve, which I gather is authorized by the agreement that you have with the owners. Now, why is that a conversion? I don't – I don't understand it. Conversion refers to possession primarily, as I understand it. So I don't – I just don't understand what the cause of action is. And I'm sorry, Your Honor, the cause of action in 2000 or the cause of action as filed in the amended complaint? 2000. Well, in 2000, there's – The agent says I'm going to hold 100% of this to meet contingencies, which I'm authorized to do. Right, and as – How can you bring a lawsuit? How can you bring a conversion lawsuit at that point? Well, Your Honor, the conversion occurs, and if you look in the trust world, which is now how they want to characterize this, look, if the trustee refuses to return your money, then there's a conversion. But that wasn't the case in 2000. In 2000, they got a letter – With the reserve. That's when the reserves were set. And that was – they got a letter disputing the claim. He clearly – Mr. Hebert clearly knew in 2000, and the district court properly made that determination. But what would have been the cause of action if there had been a lawsuit at that point? Well, as opposing counsel noted, there were several causes of action, and he's sort of formulating them as they go along. But there's – Well, as you mentioned – Well, I said you could bring an action for abuse of discretion in raising the reserves. And it's a breach of – Whatever that's worth. I don't know what it's worth. It's a breach of contract, Your Honor, and they were both – they both had – you know, Mr. Hebert had individual liability in the FTC case. There were ongoing disputes. What changes is how the money is spent over time. It's not that it's not taken. I mean, that money was being used. It wasn't set. It's a different claim based on the same corpus of money. If there had been a breach of contract action based on the amount of the reserves, what would have been the damages? The pro rata share of the reserves as provided for under the contract. And what would that have been? Well, it depends. And, Your Honor, we have sort of a record issue as to whether or not that contract is properly, you know, in the record and considered on the motion for new trial versus the motion for preliminary injunction and the motion to dismiss. That came in the motion for a new trial, which was not proper. And I think that that's a pretty – Motion for a new trial was not proper? Motion for a new trial because there was no trial. It essentially should have been a motion to reconsider and supplement the record. There was no trial. It was all done on preliminary injunction and a motion to dismiss. Yeah, but a court can recharacterize a pleading to make it conform to the requirements of the federal rules. Sure, but Judge Martinez didn't do that. Judge Martinez felt like he had a sufficient record to make the determination. And the running of the statute of limitations is a question of fact, that he had – It seems like – I guess what's uncomfortable here is it seems like your client got a windfall. Well, Your Honor, I heard you ask that question. And I think – well, I'm certain that as the record developed that that would not be what's the case. And it may be that Judge Martinez was looking ahead and saying, well, we know what the ultimate result will be. There isn't a windfall, and this is going to be a complicated matter. And statute of limitations is just a threshold issue. The lawsuit will have other issues related to whether or not they're entitled to their share and liability in the FTC matter. Well, if the FTC matter had commenced prior to Olympic's increase of its withholding of reserves to 100 percent, would Cotto have nonetheless had a mature claim against Olympic? I think the fact that the decision to withhold 100 percent of the reserves and the announcement of that and the objection to that all occurred before the FTC complaint is significant. I think if it had occurred before, it still would have arose. If the FTC lawsuit had come in 1999 as opposed to 2000, then you still have the same issue. You still have the conversion of the money in 2000 and the complaint about it, the knowledge that they have a cause of action. And they're just spinning the perspective on how we're going to address these same funds, this same body of money. Well, I can see where the timing with respect to the FTC action would affect a claim for abuse of discretion in maintaining the level of reserve, breach of contract, retaining level of reserve. But I don't understand what it's got to do with conversion. You haven't explained to me anyway why there's any conversion involved here. Well, Your Honor, I think in this case the breach of the contract and the conversion are one and the same. The contract provides for holding of money and remitting it. You mean an agent who is authorized to maintain a reserve at what he regards as an appropriate level is committing a conversion when he raises the reserve requirement? Well, Your Honor, I don't think 100 percent reserve requirement is. Well, now you're saying 100 percent. That seems to be part of the picture here, that this is 100 percent. That's different than it would have been 90 percent. I think it certainly is part of it. I think if he said, look, these reserves are set based on the chargebacks, the refunds, other factors related to the transactions that were going through the LEC billing process. If it was reserved. You're saying an unreasonable level of reserves is a ipso facto conversion. Right. And if you apply the storage facility analogy that Cotto suggests, it would be that you would take your goods that are sitting in the storage facility and move them somewhere else and said, I'm going to take these to my house. And then seven years later I said, I'm not going to take them to my house. I'm going to take them to my office. And somehow that's a different claim. It's still the body of money has still been treated and converted in a way that was not that Mr. Hubbard objected to. And I think Judge Martinez got it right here when he made the determination based on the evidence that was before him. And principally this letter and the amendment process where it's a moving target. They're changing the nature of the claim to try to survive because, and this could go on and on and on, and depending on how that money was spent. Well, if they had filed something in 2000 or within the three years of 2000 and the FTC action was still going on, what would have happened to the lawsuit? Well, a whole host of things could have happened. One is frequently parties have a dispute against a common enemy. They'll get into some kind of tolling agreement or the like. But the parties have a right to know, to have finality here, and to know their ability to use that money and to mount a legal defense and to pay their bills or however they're going to treat that money that's now theirs. They would either enter into a tolling agreement or they could have litigated it. I mean, there's no rule against having two lawsuits with a party having two lawsuits at any one time. So there's no reason that lawsuit couldn't have proceeded under a normal civil schedule. All right. Thank you, counsel. Thank you, Your Honor. Rebuttal. Your Honor, to address your last question, we would not have been able to assert this lawsuit prior to the FTC judgment. In fact, I noted in paragraph 12 of the amended complaint that on December 14, 2000, Mr. Eisenberg sent Mr. Hebert a statement showing the reserves were $5 million for the EPV entities. So had we filed an action before the FTC judgment, it wouldn't have had a basis because there was no repudiation. There was no assertion of ownership by them, and that didn't occur until 2007. What was the purpose of sending the letter then? I'm sorry? What was the purpose of sending the letter objecting to the reserves being raised? Because my client wanted the money. Either is it distributed to the owners of the program or is it held in reserves? So you thought that you had a right to use the money. Well, we asked for the money because obviously what was not held in reserves certainly would be given to us. And Mr. Hebert did object at the time to holding the reserves at 100% level. But at the time, as indicated, there was this looming threat of an FTC action to end up with a $17 million judgment. Well, everyone thought that the judgment was going to be a whole lot more than what the payout. Everyone thought this money was not going to be enough. Right. I mean, the back story on either side is they might have gotten a windfall. The other side, it looks like no one expected there to be any money. So why spend all the money on the lawsuit? I think that's correct. And in my last few seconds to address Judge Cudhey's point about the conversion, there could not have been a conversion action in 2000 because under Washington law, it's depriving someone of property without legal justification. Here they had a contractual right to set the reserves. So I don't believe we would have been able to have a conversion lawsuit back then as well. All right. Thank you. Thank you, Your Honor. Thank you to both counsel for your argument in this challenging case. This case is submitted for decision by the court.
judges: Cudahy, Rawlinson, Callahan